# THEODORE A. K. HUMMELSHIME, WARD M. EICHELBERGER AND HAROLD B. HUMMELSHIME.

## *vs.*

## STATE OF MARYLAND.

*Conspiracy*: *bribery; evidence of detectives.   Letters*: *mailing of—; letter chutes.*

In a prosecution for unlawful conspiracy, if the concerted action upon the part of the traversers is admitted (expressed), the issue remains whether their conduct was actuated by innocent motives or by unlawful purposes.          p. 566

That is a question for the jury, not reviewable by the courts.
p. 566

In the case of crimes, where an essential element is the want of consent of the individuals against whom they are committed, the instigation of the crime by the person to be affected is a defense to the prosecution.          p. 570

But this principle does not apply to the case of the prosecution of public officers for an alleged conspiracy to demand a bribe for official action.          ·          p. 570

In this State, the jury are the judges of both law and fact in criminal cases.          p. 570

The fact that the proposal of a bribe to influence certain members of a city council originated with a detective who was employed to investigate their offiical conduct, does not exempt from prosecution public officials who unlawfully conspire to demand a bribe to influence their own action as city councilmen.
p. 571

Where there is a conflict of evidence as to how the bribe originated, it is a question for the jury.          p. 571

Where it is a question of the mailing of a letter, testimony may be given as to whether the mail chute into which it had been placed was connected with a letter box on the lower floor.

p. 567

In a trial for a criminal conspiracy to bribe city officials, the defendants have the right to ask, as reflecting on the bias or interest of a particular witness, whether he is one of those who promoted the investigation.                        p. 567

But a general inquiry as to the names of the citizens who were instrumental in having the detective sent to investigate the officials is an irrelevant one.                        p. 567

*Decided March 2nd, 1915.*

Appeal from the Circuit Court of Allegany County. (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Lewis Eppler* and *Archibald A. Young,* for the appellants.

*Albert A. Doub and Edgar Allan Poe, the Attorney-General,* for the appellee.

URNER, J., delivered the opinion of the Court.

The appellants were convicted in a trial by jury in the Circuit Court for Allegany County upon an indictment which charged them with having unlawfully conspired to demand from a certain Elmer J. Miller the sum of eight

hundred dollars for the purpose of corruptly influencing two
of the accused in the performance of their official duties as
members of the City Council of Cumberland, the sum men-
tioned being intended as a bribe to secure the votes of the
two councilmen in favor of the payment of a claim against
the municipality, held by the firm of Merrill Ruckgaber
Company, in the amount of eight thousand dollars. A brief
preliminary statement of the circumstances under which the
prosecution developed will facilitate our discussion of the
questions raised by the record.

In August, 1914, some persons, undisclosed by the proof,
acting through Mr. David A. Robb as their attorney, engaged
the William J. Burns Detective Agency to investigate the
municipal administration of Cumberland, and particularly
the official conduct of Dr. A. K. Hummelshime and Mr. Ward
M. Eichelberger, two of the members of the City Council.
The agency detailed for the investigation a dectective by the
name of Elmer J. Miller. It was arranged to have him
appear in Cumberland in the pretended capacity of a repre-
sentative of the Merrill-Ruckgaber Company, a firm employed
in the construction of the dam for the new City water supply,
and whose claim for a balance of $8,000.00 on account of
that work remained unpaid. The consent of the firm was
obtained for Miller to assume the name of Albert Ruckgaber,
one of its members, who was not known in Cumberland, and
to confer with the councilmen ostensibly for the purpose of
securing a settlement of the claim. The detective arrived
in Cumberland on the last day of August. From the first
to the sixth of September he had a series of interviews with
the appellants, which were held with them separately, but,
according to his testimony, were connected and sanctioned
by their co-operation, and culminated in a proposition sub-
mitted to him by Harold B. Hummelshime, son of the coun-
cilman, that eight hundred dollars be paid in advance for
the votes of his father and Mr. Eichelberger in favor of the
allowance of the Merrill-Ruckgaber claim by the City Coun-
cil, with the understanding that the money was to be refunded

in the event that the motion for the payment of the claim should be defeated. The defendants do not deny that they had interviews with Miller, under the belief that he was a member of the claimant firm, or that a bribe of $800.00 for the votes of the two councilmen was discussed and agreed upon, but they testified that he originated the proposal and that they entertained it only with the object of securing his conviction for attempted bribery. It was planned that the money should be delivered in the City of Washington, and Miller met Harold B. Hummelshime there, by appointment, for that purpose, but no payment was actually made, except of the sum of ten dollars on account of the latter's expenses, as the detective concluded that he had succeeded in providing sufficient evidence for a successful prosecution of the defendants upon the present charge.

The primary fact of concerted action on the part of the defendants in reference to the proposed bribe being admitted, the real issue in the case was whether the conduct of the accused was actuated by innocent motives or by an unlawful purpose. As the determination of that vital question was exclusively within the province of the jury, and is not subject to review by this Court, there is no occasion for us to recite the evidence offered by the prosecution and defense in support of their respective theories.

In our examination of the record we have been unable to find any prejudice to the appellants in any of the rulings. The evidence adduced by the State was kept strictly within its due and proper bounds, and adequate opportunity was afforded for the development of the defense.

The first and second bills of exceptions show that the detective Miller, after testifying to his first interview with Dr. Hummelshime, was asked to refresh his recollection from verified copies of his notes as to what happened the next day. Upon objection being made the Court ruled that the witness might use the notes simply to aid his memory as to when the next conversation occurred. The inquiry was not pursued and the notes do not appear to have been used for

any purpose, and these exceptions, therefore, need not be further considered.

The third exception was taken to the overruling of an objection to a question propounded to the same witness as to whether a mail chute, in the Woolworth Building in New York, in which he had placed a letter addressed to Dr. Hummelshime, was connected with the mail box on the lower floor. This was a proper fact to be proven in that connection, and the same question had already been asked and answered in the affirmative without objection.

On cross-examination the detective was asked who was employing the Burns Detective Agency for the Cumberland investigation. An objection to this question was sustained, but when it was changed in form so as to inquire whether any of several designated persons had anything to do with the employment of the agency, the objection was overruled. There is no suggestion that the proper presentation of the defendant's case depended upon a knowledge of the identity of the persons by whom the services of the detective agency were secured. The defendants were, of course, entitled to ask, as reflecting upon the interest or bias of a particular witness, whether he was one of those who had promoted the investigation, and this right was fully protected by the Court's ruling. But a general inquiry as to the names of the citizens who were instrumental in having the detective sent to Cumberland could not aid the jury in determining the guilt or innocence of the accused upon the specific charge preferred.

By the fifth bill of exception it appears that the detective was asked on cross-examination whether he investigated any other members of the City Council. This question he declined to answer. He was then asked to state his reason for this refusal, but an objection was here interposed and sustained. The next question propounded was whether it was necessary to investigate any other person in connection with the water system. This was also disallowed, and forms the subject of the sixth exception. There can be no doubt as to

the propriety of these rulings, as the questions were plainly irrelevant to the issue before the jury.

The seventh exception was reserved to the action of the Court in overruling an objection to a question asked the witness Miller as to whether it is usual for detectives to act under assumed names in making investigations like the one in which he was engaged in this instance. His answer was in the affirmative. It was doubtless the object of this inquiry to support Miller's credibility by showing that he was not resorting to any unusual methods, for the kind of service in whch he was engaged, when he concealed his identity in the manner described. The question was permissible for such a purpose, and in any event we do not see how the answer could have caused the defendants any injury.

In the course of the cross-examination of Mr. David A. Robb, who had testified in chief for the State, he was asked, as shown by the eighth bill of exception, to give the names of the citizens he represented in employing the detective agency. The Court ruled in effect that the question could not be asked generally, but that it would be allowed for the purpose of disclosing the names of any persons who were alleged by the defendants to be engaged in a conspiracy to have them wrongfully prosecuted. This position was later modified, as indicated by the ninth bill of exceptions, by a ruling that Mr. Robb could not be asked whether a designated person was one of those who helped to employ the detective agency, but that if the person named were called as a witness for the State, it might be permissible to question him on that subject. The opportunity thus suggested was afterwards presented and was accepted by the defense. Under such circumstances the refusal of the Court to require Mr. Robb to divulge the names of his clients was neither injurious nor improper.

When Dr. Hummelshime was testifying on behalf of the defendants he was asked in chief to state what his son had reported when he returned from his interview with "Ruckgaber" in Washington. An objection to this question was

sustained, and forms the basis of the tenth and last excep-
tion. It was testified by Harold B. Hummelshime that upon
his return to Cumberland he related to his father and Mr.
Eichelberger what had transpired on the occasion just men-
tioned. His version of the interview in question did not
differ in any of the essential details, from that of the detec-
tive. It seems clear, therefore, that if it be assumed, though
we do not so decide, that the inquiry embodied in this excep-
tion would have been proper, there was no prejudice to the
defense in the refusal to permit Dr. Hummelshime to repeat
a statement made by his son with which the proof of the
State substantially agreed.

It appears from the record that after all the evidence had
been offered, and before the argument to the jury was begun,
Mr. Doub, the Special State's Attorney in charge of the case,
was excused at his request, for about fifteen minutes, and
that during this interval JUDGE KEEDY imposed sentence
upon a prisoner who had been convicted of murder in the
second degree, and in that connection expressed at some
length the views of the Court as to the insufficiency of one of
the defenses upon which the prisoner had relied in his trial
as against a charge of murder in the first degree. These
remarks were made in the presence of the jurors impaneled
in the pending case, several of whom had served on the jury
by which the verdict in the homicide case was rendered. It
is urged that the general effect of the statements thus made by
the trial judge was harmful to the interests of these defend-
ants. No exception was taken to the expressions of the Court,
and no suggestion appears to have been made at the time
that they might have a prejudicial influence. The objection
now urged is therefore not a proper subject of decision on
appeal. *Mitchell* v. *State,* 115 Md. 367; *Cross* v. *State,* 118
Md. 672.

The argument on behalf of the defendants was mainly
directed to the proposition that even if the theory of the
defense be disregarded and the evidence adduced by the
State be accepted as true, the case does not admit of a con-

viction because it shows that the defendants were enticed by the detective into the commission of the offense with which they are charged. This question is not presented by any exception in the record and is not shown to have been raised or ruled upon in any way at the trial. The objection urged as to the sufficiency of the evidence to prove the conspiracy alleged in the indictment is not open for our determination. In this State the jury are the judges of both the law and the facts in criminal cases, and we have no authority to disturb a judgment based upon their verdict in the absence of reversible error in the rulings of the Court. *Jessup* v. *State,* 117 Md. 119; *Garland* v. *State,* 112 Md. 83; *Dick* v. *State,* 107 Md. 17; *Luery* v. *State,* 116 Md. 284; *Lanasa* v. *State,* 109 Md. 602. If however the question were properly before us for decision, we could not adopt the theory which the defendants have advanced. The principle they invoke is one which has been applied in some instances where an alleged offense against property rights has been instigated by the person to be affected, whose consent thus given elim inates one of the essential elements of the crime. The decisions upon the subject are collected in notes to *State* v. *Smith,* (152 N. C. 798), 30 L. R. A. N. S. 946, and *Connor* v. *People* (18 Col. 373), 23 L. R. A. 341. In the note to the first cited case it is said: "In larceny and other crimes where a want of consent of the individual affected is an element of criminality, instigation or consent to the crime is a defense to prosecution, if it negatives one of the essential elements of the crime charged, though not otherwise." This doctrine is clearly inappropriate to a prosecution of public officers for an alleged conspiracy to demand a bribe for their official action.

In *People* v. *Liphardt,* 105 Mich. 80, where a member of a board of education was indicted for receiving a bribe, it was held to be no defense that the prosecuting witness encouraged another member of the board to advise the defendant that the witness would accept an offer from him to sell his vote, and that the witness in conjunction with the

mayor and the police made plans to entrap and detect the defendant in receiving the bribe thus proposed. To the same general effect is the case of *Rath* v. *State,* 35 Tex. Crim. Rep. 142, where the defendant was being prosecuted for offering to bribe an officer, and it was held to be immaterial that the officer made the suggestion of bribery.

If, therefore, in the case before us, it was undisputed that the proposal of a bribe to influence the votes of the councilmen originated with the detective who had been employed to investigate their official conduct, we could not for that reason sustain the defendant's claim of exemption from prosecution. But the testimony of the detective was that while he indicated his willingness to pay "any expenses" connected with the passage by the Council of the account in which he was ostensibly interested, the proposition for the payment of money as a bribe emanated from the other parties to the negotiations. The evidence offered by the defendants was to the contrary effect, but the conflict of proof upon this point presented an issue which the jury alone had the right to decide, and this consideration is sufficient in itself to prevent the acceptance of the theory relied upon as a ground of immunity.

As we have found nothing in the rulings of the Court below to justify a reversal, the judgment must be affirmed.

*Judgment affirmed, with costs.*