DIGGINS *v.* STATE
[No. 35, October Term, 1951.]

*Decided December 5, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Alan H. Murrell* for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *Edwin A. Gehring, Assistant State's Attorney,* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a conviction of assault upon Harry S. Miller and a fine of $5.00. The case was tried without a jury. A motion for a directed verdict of not guilty was denied at the close of the State's evidence and was not re-offered at the close of all the evidence.

The State contends that under Rule 7 (c) of the Criminal Rules of Procedure the verdict cannot now be reviewed upon the evidence. The contention is that "when a criminal charge has been so tried by the court" means "tried by the court and a motion for a directed verdict has been denied at the close of all the evidence", and then only may this court review upon the evidence. In

other words, to obtain a review upon the evidence the defendant must move for a directed verdict on the ground of legal insufficiency of the evidence, though such a motion may be patently futile. This contention is unsound. "So tried by the court" in Rule 7(c) means only "tried by the court without a jury" in Rule 7(a). We have noted "both the substantial identity of the scope of appellate review and also minor differences in procedural details with respect to credibility of witnesses, in law, equity and criminal cases, in Maryland and in the federal courts." *Edwards v. State,* on motion for reargument, 198 Md. 152, 153, 83 A. 2d 578, 579. As in non-jury civil cases, an appeal from the judgment is enough to bring up the whole case for review, without a motion for a directed verdict or for any other ruling. The full review upon the evidence under Rule 7(c) necessarily includes the limited review under 7(b), though this circumstance may perhaps, in practice, render Rule 7(b) superfluous.

Miller conducts an automobile business on East Lexington Street, a few blocks beyond the Central Police Station. Defendant is a policeman and a member of the Vice Squad. On the morning of October 19, 1950, Officer Stefan of the Vice Squad parked his automobile near Miller's office, at a place where Miller claimed a special parking license. That afternoon defendant, Officer Stefan and another Vice Squad officer, none in uniform, drove a police car in front of Miller's office. They then discovered a parking ticket on Stefan's car. This, all witnesses agree, started controversy between the officers and Miller. As to details of the controversy the testimony is conflicting. Miller and two other witnesses say the officers started an "argument" about the parking ticket, defendant threatened to arrest Miller and, without cause, did arrest him and handled him roughly. The officers say Miller started the argument, threatened to have the car impounded if parked there again, resisted arrest, and struck defendant. Defendant and Stefan say Miller used an indecent word, and defendant says, "He pushed my arm. I placed him under arrest." The

word used was not an epithet applied to anyone and not a word unfamiliar to a policeman or likely to incite him to a breach of the peace. A uniformed officer, who arrived on the scene after the arrest, evidently thought Miller was not getting fair treatment and tried, without success, to give him an opportunity to telephone for someone to care for and close his office while he was taken to the police station. Incidentally, relations between Miller and policemen on the beat appear to be friendly, but his relations with the Vice Squad, and also relations between uniformed policemen and the Vice Squad appear strained. Miller was charged with disorderly conduct and assault on defendant. At the hearing the next morning the magistrate dismissed the charges. Miller charged defendant with assault; defendant prayed a jury trial. Indictment and trial followed.

It is not within our province to decide *de novo* questions of credibility between opposing witnesses—or, we may add, questions between members of the Vice Squad and uniformed members of the police force. We cannot set aside the verdict on the evidence, unless it is clearly erroneous. In this case the verdict is not clearly erroneous. *Edwards v. State,* 198 Md. 132, 81 A. 2d 631; on motion for reargument, 198 Md. 152, 83 A. 2d 578.

Against this obvious disposition of this case defendant contends that the verdict was based on an erroneous view of the law as to the right of a police officer to arrest. This contention is based on a series of questions by the judge to defendant while defendant was testifying. These questions, defendant contends, indicate that the judge was of the opinion that an officer not in uniform has no authority to arrest for disorderly conduct in his presence. Though appeals are allowed from judgments, not from opinions, the opinion of a court may show or tend to show that the judgment is erroneous. *Cf. Williams v. McCardell, et al.,* 198 Md. 320, 84 A. 2d 52. We are not, however, at liberty to scour a record to find remarks that may suggest some error of law, and then to ascribe

the judgment to such a lurking error. At the close of all evidence the judge said, "Well, I think Mr. Miller is an excitable kind of a man and as Samuel L. Clemens remarked when it was reported to him that Mark Twain was dead, he said, 'the reports of my death are greatly exaggerated.' I think Mr. Miller has greatly exaggerated his alleged injuries. Nevertheless, he had a right to be indignant because there was no breach of the peace which occurred in the presence of these police officers. And I conclude that because of the parking ticket that was put on Officer Stefan's car, an altercation developed between the officers in plain clothes and Mr. Harry Miller. The officers exercised very bad judgment in assuming they had a right to arrest Mr. Miller and to detain him forcibly. I conclude from the facts that they had no such right or authority and that they were abusing their authority in arresting him. Consequently, in laying their hands on him, they were guilty of an assault. When some trouble develops over the parking or illegal parking of an automobile, and it is a private automobile, officers have no greater privilege or authority than anybody else. For the reasons I have given, I conclude that the verdict in this case must be guilty."

We find no error in this opinion. We cannot assume that the judge intended to distinguish between breach of the peace and disorderly conduct, and found a verdict of guilty because defendant had authority to arrest for the one but not for the other. The fair interpretation of the opinion, in connection with the evidence, is that the parking ticket was regarded as the real ground of offense, and that was neither a breach of the peace nor disorderly conduct nor any other crime. Defendant's disputed testimony that Miller "pushed my arm", and likewise Miller's alleged language, if believed at all, may have been regarded as mere pretexts for defendant's action in arresting Miller. We express no opinion whether or not the alleged language, in the circumstances, would constitute disorderly conduct.

*Judgment affirmed, with costs.*