## LAWRENCE G. CARTER *v.* STATE OF MARYLAND

[No. 385, September Term, 1969.]

*Decided July 21, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Frank B. Cahn, II,* for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and

*Stephen E. Harris, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Lawrence G. Carter, the appellant, was convicted of receiving stolen goods in the Criminal Court of Baltimore by Judge David Ross presiding without a jury. The sentence was one year imprisonment.

It was stipulated that the home of one Newton Stumpf was broken into on January 15, 1969, by a person or persons unknown and certain items stolen, among which was a .22 caliber automatic pistol, valued at $40.

David Bloom, a 15 year old at the time of the crime, admitted breaking into the Stumpf home on January 15, 1969, stealing among other items the .22 caliber automatic pistol. Later in the day, on Eastern Avenue, Bloom was introduced to Carter by a mutual friend, and discussed the sale of the pistol. The same evening Bloom met Carter in the rest room of a local restaurant and completed the sale at the price of $30. Bloom did not think he had told Carter the gun was stolen, nor had appellant inquired about the source of the merchandise. On cross-examination, Bloom admitted that he had been granted immunity from prosecution for the breaking in this case if he would testify. He also admitted that he had been convicted for another felony, burglary, committed after the Stumpf crime, but before the trial.

Officer Ralph Wright of the Baltimore City Police Department testified concerning Carter's arrest. Officer Wright said he received certain information concerning the breaking, and based on that information, obtained two warrants, including one for the appellant. Wright approached Carter on the street on January 20, informed him of the warrant for his arrest, but allowed him to remain at large for two days because his mother-in-law was dying.

Carter testified in his own defense, stating he was 22 years of age, had completed high school, attended one

semester of college, and was currently employed by a hardware company as a repairman. Appellant denied having even seen Bloom before that day in court, knowing the friend who purportedly introduced him to Bloom, and denied all connection with the purchase of the stolen pistol. Although he was arrested around January 20, 1969, (about five days after the alleged sale), appellant was unable to account for his whereabouts on January 15. He did not know what day of the week it was, whether he had been at work or not, and assuming he had been at work, was unable to explain what he did or where he had been, claiming that since he worked on a traveling repair truck he worked all over the city.

Appellant contends there was insufficient evidence to support his conviction. There is no disagreement between the State and the appellant as to the four elements of receiving stolen goods:

(1) The property must be received;

(2) At the time of receipt it must be stolen property;

(3) The receiver must have guilty knowledge that it is stolen property; and

(4) The receiver's intent must be fraudulent.

Cobb v. State, 2 Md. App. 230, 234 A. 2d 155. Appellant directs his insufficiency contention primarily to the third element claiming there is no proof of his guilty knowledge that the goods were stolen.

The trial judge, as the finder of facts, believed the witness Bloom that he had in fact stolen the gun and sold it to Carter and found the circumstances of the sale sufficient to show a guilty knowledge or *scienter,* on the part of the purchaser, Carter. He pointed to Carter's unconvincing denial of the purchase to support his finding.

Generally, disbelieving evidence provides no basis for finding evidence to the contrary; however, there is an exception involving *scienter* or guilty knowledge, *i.e.,* reasons for disbelieving a denial of *scienter* may provide a basis for finding *scienter*. *Hayette v. State,* 199 Md. 140, 85 A. 2d 790; *Moore v. State,* 199 Md. 676, 87 A. 2d 577, 579-80; *Brown v. State,* 200 Md. 211, 88 A. 2d 469; *Fer-*

54

*raro v. State,* 200 Md. 274, 89 A. 2d 628, 630; *Wild v. State,* 201 Md. 73, 92 A. 2d 759, 761; *King v. State,* 201 Md. 303, 93 A. 2d 556, 559; *Shockley v. State,* 218 Md. 491, 148 A. 2d 371, 374; *Bell v. State,* 220 Md. 75, 150 A. 2d 908, 912; *Kolker v. State,* 230 Md. 157, 186 A. 2d 212, 213; *Boone v. State,* 2 Md. App. 80, 233 A. 2d 476, 494; *Fisher v. State,* 5 Md. App. 155, 245 A. 2d 624, 626; *Williams v. State,* 7 Md. App. 5, 252 A. 2d 880, 885; and *Wilson v. State,* 7 Md. App. 41, 253 A. 2d 439, 445. However, although this rule has been often repeated, the boundaries of its application have not been delineated.

The rule concerning finding *scienter* in no way affects other aspects of criminal law. The State still has the burden of proof; and the defendant is still presumed innocent and does not have to prove his innocence. He may remain silent without comment on that silence. The defendant may, if he wishes, testify in his defense. If he does so, ordinarily, disbelieving his testimony is not the same as finding positive evidence to the contrary, except the permissibility of finding *scienter* based on the defendant's denial of *scienter.*

In order to find a defendant's story so inherently improbable as to justify finding *scienter* from defendant's denial, there must be some additional circumstance establishing the inherent improbability of defendant's denial. If defendant merely denied all guilty knowledge and no evidence, from either the defense or the State, put that denial in the position of being more than merely disbelievable, a finding of *scienter* from such a denial will not be allowed to stand. Since the finding of *scienter* from a denial of it is a concept of some subtlety, it must appear in the record what circumstances the trial court relied upon in elevating a denial by the defendant from being merely disbelievable to the status of justifying a finding of *scienter.*

An alibi or explanation by defendant after his accusation may justify the finding of *scienter* if defendant denies all knowledge of the inculpatory circumstances when it would be practically impossible for defendant to be as

ignorant as he claims, *e.g.*, that a defendant who had worked in a bar for 27 years, three of them as manager, could be completely ignorant of the sexual acts performed by the waitresses in the same room with him. *Kolker v. State, supra.* See also *Hayette v. State, supra; Brown v. State, supra; Ferraro v. State, supra; Shockley v. State, supra; Wilson v. State, supra; Wild v. State, supra; People v. Malmenato,* 150 N.E.2d 806 (Ill. 1958); and *United States v. Arcuri,* 405 F. 2d 691 (2d Cir. 1968). Some states require more than a practical impossibility that defendant is not as ignorant as he claims; these states seem to require that defendant present a deliberate falsehood. *People v. Dupre,* 68 Cal. Rptr. 525, (Cal. Ct. App. 1968), *Commonwealth v. McCarthy,* 172 N. E. 97 (Mass. 1930).

Similarly, changes in defendant's explanation or conflicting admissions may support a finding of *scienter,* since while either of defendant's stories may be true, both cannot be and the changes indicate an attempt to hide the guilty knowledge. *Wilson v. State, supra, Fisher v. State, supra, Moore v. State, supra, People v. Lobb,* 161 N.E.2d 325 (Ill. 1959). The failure of defendant to conduct himself as would an innocent man may show knowledge of guilt. *King v. State, supra, State v. Clancy,* 117 A. 304 (Me. 1922). Of course, it is elementary that conduct, such as flight, can show even more than *scienter.*

While the majority rule allows, within the limitations of this opinion, the finding of *scienter* from its denial, at least one state does not allow the finding, *State v. Taylor,* 422 S.W.2d 633 (Mo. 1968).

In the instant case to justify the finding of *scienter* from the disbelief of defendant's denial, the trial judge relied on defendant's total inability to account in his testimony for his activities on the day of the sale of the pistol. This is permissible when it is noted that appellant was first approached by the police within five days of the sale and, while claiming to have been at work, he was unable to remember anything he had done on that day. The idea that a man who was intelligent enough to

attend college would lose all memory of an entire day in his life within less than one week when there are several people available to stimulate his memory (employers, supervisors, co-workers, customers, friends, or other people the defendant routinely comes in contact with during his business) is inherently improbable.

Admittedly, it is an abstract concept to differentiate between false stories that may be merely disbelieved and those that justify a finding directly to the contrary based on the disbelief; but the line between guilt and innocence is not always clearly marked and in those cases, as here, where the line is fine or indistinct it is the duty of the trial court to determine where guilt or innocence lies. In this case, we cannot say the trial court was clearly erroneous in using the defendant's testimony to support the verdict or in finding *scienter* based on the other testimony. We point to this evidence: (1) Carter agreed to purchase a pistol from a fifteen year old boy he had just met on the street; (2) The sale was consummated in a rest room; (3) The merchandise purchased was a pistol; and (4) There was no inquiry as to the origin of the merchandise.

*Judgment affirmed.*
*Appellant to pay the costs.*