JOHN EDWARD WOODARD, JR. *v.* STATE
OF MARYLAND

[No. 80, September Term, 1972.]

*Decided October 26, 1972.*

The cause was argued before MORTON, ORTH and GIL-BERT, JJ.

*Charles Duvall Smith,* with whom were *Taylor & Smith* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Eugene Muskus, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was convicted of armed robbery by a jury sitting in the Circuit Court for Prince George's County and sentenced to a term of twenty years. In this appeal he contends (1) that his motion for judgment of acquittal should have been granted; (2) that the trial judge erred in his instructions to the jury; and (3) that statements made by the state's attorney in the course of his final argument warranted the granting of a mistrial.

The record indicates that appellant and several others entered a music store at approximately 3:30 p.m. on October 23, 1971. According to the store manager, who was behind the counter talking to a customer, he recognized the appellant among the group because he had previously seen him participating in "Golden Gloves fights." He stated that the men looked at records and albums and then, while he was still talking to the customer, "the next thing I knew somebody put a gun up to my head and told me to come in the back." He was ordered to knock on the office door of the owner of the shop and when admitted, he and the owner were hit on the head with a pistol, were bound and gagged, and approximately $2,300 was taken from the office safe. The manager further testified that at some point after the men entered the store

two or three of them donned stocking masks. As a result, he could not identify the person who ordered him to the back office nor could he identify the person or persons who hit him and the manager on the head or those persons in the office who bound and gagged him.

When asked specifically about appellant's presence in the store, he stated that he observed appellant looking at posters on the wall and that he had been in the store seven or eight minutes when one of the men, whom he could not identify, placed the gun at his head. He stated that there were five or six customers in the store at the time of the holdup and that when he was able to free himself and return from the back office to the front of the store, no one was present except a customer who was lying on the floor in a pool of blood. It was then that he tripped an alarm which brought the police to the store in approximately ten minutes.

The manager advised the police that he knew the appellant only by the name of "Woody". When shown appellant's photograph, however, he identified him as having been in the store at the time of the robbery. When asked about appellant's participation in the robbery, he stated, "I saw him come in the store just before the robbery but that was all I saw after the guy put the gun to my head and took me back."

The owner was unable to identify any of the participants in the robbery.

A police officer testified that appellant was arrested in Washington, D. C., waived extradition and, after being "advised of his constitutional rights", was interrogated. According to the officer, "I again questioned him reference to his involvement in the armed robbery of the Southern Music Company and specifically questioned him as to the identities of the people whom I had not arrested, and he continued to deny his involvement in the crime, stated that he was innocent of the crime. However, during the interrogation, or sometime during the interrogation he stated to me that he had heard through a friend of his, whom he refused to identify, that the

manager of the record shop had fingered him as being one of the persons responsible for the robbery. I attempted to delve into this bit of information that he had provided me with in detail. However, at this time Mr. Woodard stated that he did not desire to provide me with the identity of the person who had given him that information and he wanted to have time to think about what he was doing. He said, he also indicated to me that he did not want to be held responsible for this crime by himself and for me to give him a few days to consider the possibilities prior to going any further in the interrogation."

Appellant took the stand in his own defense, admitted having been previously convicted of grand larceny, but denied having been in the store on the day of the robbery asserting that he had spent the day at home sleeping. An eighteen-year old niece of appellant's wife, who lived with them in their Washington, D. C., home, testified that appellant was at home on the day of the robbery when she returned at 3 p.m. and was there until 5 p.m. when he left to meet his wife at a grocery store. She remembered October 23, 1971, because they were giving a cocktail party the next day, October 24. His wife testified that on the day of the robbery, appellant walked with her to the bus she took for work at 9 a.m. and as far as she knew, he returned home where he spent the day and then joined her about 6 p.m. near her work.

The State, in this appeal, concedes that the mere presence of an individual at or near the scene of a crime at the time of its commission is not legally sufficient to establish that individual's guilt of the crime although it is an element to be considered in determining guilt or innocence. *McDuffie v. State,* 10 Md. App. 190; *Prior v. State,* 10 Md. App. 161, 165. From our review of the evidence, however, the appellant's presence in the music store at the time of the robbery was the only affirmative evidence offered by the State to support its charge that appellant was a participant in the robbery.

It was not actually established that appellant accom-

panied the robbers to the store for the manager simply testified that "the first thing I noticed was Mr. Woodard when he first came in the door. There was about four, three or four guys came in the store and looked at the albums and records we had and I saw Mr. Woodard come in, and I recognized his face because I used to watch the Golden Glove fights." It was not even established that Woodard was still in the store when the robbery occurred for the manager stated that seven or eight minutes elapsed between the time he observed appellant enter the store and start looking at posters and the time an unidentified individual put a gun to his head and directed him to the rear of the store. In response to a question from the presiding judge, the manager stated that he did not talk with Woodard after he observed him enter the store nor did he observe Woodard don or wear a mask.

The State would have us believe that the statement of Woodard to the police and his denial of having been at the scene of the crime were inculpatory elements of the crime which, when added to his presence at the scene of the crime, constituted evidence that was legally sufficient to warrant a finding of his guilt. We think these additional reeds are too slender to support the argument that they constitute sufficient additional elements, when added to the element of presence, to establish guilt.

It is true that appellant said that he "did not want to be held responsible for this crime by himself" but it was said by an individual who, according to the police officer, "was extremely nervous, frightened" and after he had consistently denied any involvement in the crime. While the phrase might create a strong suspicion of appellant's involvement, strong suspicion is not sufficient to establish guilt. Likewise, while appellant's denial of his presence in the store on the day of the robbery seems anomalous in the face of the manager's testimony, it does not, in our opinion, supply the needed additional element to establish appellant's guilt. In reaching this conclusion we are not unmindful of our holding in *Carter v. State*,

10 Md. App. 50, where Judge Thompson, in speaking for the Court, extensively analyzed the concept of finding *scienter* from a denial of guilt—"a concept of some subtlety", as he expressed it. We do not think that appellant's denial of guilt, under the circumstances here, supplied the necessary additional ingredient from which his guilt could be established.

The evidence adduced by the State below may have permitted a jury to speculate that the appellant was one of the robbers or it may have formed the basis for a strong suspicion by the jury of his guilt. These, however, are not the tests. The evidence must be such as would convince the jury beyond a reasonable doubt and to a moral certainty that appellant was guilty of the crime with which he was charged. In our view, the evidence in this record is not of sufficient dimension and quantum to meet this standard. Thus, we think it was error to deny appellant's motion for a judgment of acquittal and, accordingly, the judgment of conviction will be vacated. The case will be remanded and the lower court is directed to order a new trial if the State makes a prompt and satisfactory showing that additional probative evidence of guilt can be produced. If such a showing is not satisfactorily made, the lower court shall enter a judgment of acquittal. *Gray v. State,* 254 Md. 385; *Craig v. State,* 14 Md. App. 515.

In view of our conclusions, we do not reach the additional issues presented by appellant.

> *Judgment vacated; case remanded for further proceedings in accordance with this opinion.*