IN RE APPEAL NO. 504, SEPTEMBER TERM, 1974
FROM THE CIRCUIT COURT OF BALTIMORE
CITY, SITTING AS A JUVENILE COURT

[No. 504, September Term, 1974.]

*Decided February 21, 1975.*

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*Solomon Reddick* and *Geraldine Kenney Sweeney, Assistant Public Defenders,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Clarence Long, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 8 February 1974 the State's Attorney for Baltimore City filed petition No. 012274 in the Circuit Court of Baltimore City, Division for Juvenile Causes (Juvenile Court), averring that a male child, born 16 October 1959 (appellant)[1] was delinquent. The reason given for the averment was that on 26 December 1973, about 2:35 p.m., appellant, in the company of two other persons, "unlawfully did steal, take and carry away the goods, chattels, money and/or property of Veronica Feuka, to wit: one purse and contents, valued at $23.50." At a hearing before a Master on 11 April 1974 appellant was found to be delinquent. Maryland Rule 908 e 1; *Matter of Brown*, 13 Md. App. 625. Exceptions to the Master's findings were timely filed. Rule 908 e 2. *See Matter of Anderson*, 20 Md. App. 31, affirmed 272 Md. 85. On 2 May the matter was heard *de novo* by the Juvenile Court. Rule 908 e 3. Appellant was found to be a delinquent child. On 4 June, by order of the court, he was placed on probation under supervision of a Probation Officer.[2] On the same date the court issued an order that appellant's mother make restitution to the victim in the amount of $22.50. Courts Art. § 3-839. An appeal was timely noted "from the judgment and order." Courts Art. § 12-301 and § 12-308 (a) (1).

The issue presented for decision on appeal is whether the evidence was sufficient to sustain the finding that appellant was a delinquent child.

Appellant was a child in the contemplation of the juvenile laws of this State because he was a person under the age of 18 years and subject to the jurisdiction of a juvenile court.

---

1. See Maryland Rule 1097.

2. The conditions of probation were set out in the order:

    "While on probation the probationer shall refrain from further delinquent behavior; shall avoid persons and places of disreputable or harmful character; shall report as directed and obey the instructions of the Probation Officer; shall not leave the jurisdiction without permission and shall comply with other conditions as specified below or may at any time be imposed by this Court."

Courts Art. § 3-801 (e).[3] He would be a "delinquent child" if he committed a "delinquent act", and required supervision, treatment, or rehabilitation. Courts Art. § 3-801 (k). A "delinquent act" includes an act which would be a crime if done by a person who is not a child. Courts Art. § 3-801 (j). As the reason given in the petition for the allegation that appellant was delinquent was that he committed the crime of petit larceny, he would properly be found to be a delinquent child if the evidence adduced at the adjudicatory hearing [4] was legally sufficient to establish the *corpus delicti* of that offense and his criminal agency and that he required supervision, treatment, or rehabilitation. To be legally sufficient, that evidence must prove the allegation in the petition beyond a reasonable doubt. Courts Art. § 3-830 (a); [5] *Woods v. Department of Social Services*, 11 Md. App. 10.

The victim of the crime, Veronica Feuka, testified that she left her home at 339 E. 31st Street in Baltimore City on 26 December 1973 about 2:15 in the afternoon to go to the grocery store. She saw a "bunch of boys." Three were in front of her house, and two were across the street. She made a judicial identification of appellant as one of the boys, but she could not say whether he was one of the three in front of her house or one of the two across the street. She was walking down Barclay Street towards Old York Road when her purse was stolen — "they just took it . . . . I was carrying it on my left arm . . . it had a zipper with a chain. . . . I had it around my small finger. . . . I was holding it on the . . . shopping cart . . . and all of a sudden they took it." She did not know how many persons were involved in the incident. She did not get a look at the one who actually took it. There was $15 and $2.50 worth of food stamps in the purse, and the purse itself was worth about $5. When she

---

**3.** Acts 1974, ch. 691, § 8, effective 1 July 1974, added the words "and includes a minor." Courts Art. § 3-804 (a) (1) gives a juvenile court exclusive original jurisdiction over a child alleged to be delinquent. See exemptions, not here applicable, in Courts Art. § 3-808.

**4.** " 'Adjudicatory hearing' means a hearing to determine the truth of the allegations in the petition." Courts Art. § 3-801 (b).

**5.** The statute further provides: "An uncorroborated confession made by a child out of court is not sufficient proof of delinquency."

turned around "they were all running south up Barclay." She saw only three of them running. She attempted to describe how they were dressed. "Well, what I can remember was, one had a red shirt, blue pants and the other one had blue pants with a knitted brown hat and green hat. That's all I could remember." Upon inquiry, it was elicited that one had on a brown hat and another had on a green hat. She did not know how the third boy was dressed. She was cross-examined about her identification of appellant. The transcript of the trial reads:

> [by Solomon Reddick, defense attorney]
>
> "Q. You don't know whether this boy was one of the boys who you saw or not, do you?
>
> A. I really couldn't tell you that, because I didn't have that much good look at the boys.
>
> Q. But, I say, you don't know whether he was one or not, do you?
>
> A. He's about the size. That's about all I can tell you.
>
> Q. But, you don't know if you can identify him today? Can you?
>
> A. No."

It was clear, and the court so observed, that she did not know whether the five boys she saw when she first left her house were involved in the incident. She could not say whether any of the three boys who ran after snatching her purse was among those she had seen standing by her house or across the street.

Roberta Feuka, the mother of the victim, was looking out the window when her daughter left the house. She saw the three boys standing under the window, and two smaller ones across the street. She opened the window to throw her daughter a rain hat. She saw the two smaller boys standing across the street start after her daughter and one of them went "right after her and grabbed the purse, and the two of them ran [west on 31st Street] and the other three from that

corner, ran the other way." She identified appellant as one of the three boys standing under her window. He was not one of the two smaller boys standing across the street.

Detective John Buettner, Criminal Investigation Division, Baltimore City Police Department, was dressed in plain clothes and cruising in an unmarked police vehicle on 26 December 1973. About 2:30 p.m. he was in the area of Barclay and 31st Streets and received a radio broadcast that there had been a "purse-snatch" in the 3100 block of Barclay Street. He responded to the call and when he arrived he met another police officer and the victim. He asked Ms. Feuka for a description of the participants. She told him there were "four or five colored males . . . 14-15 years of age." "She said they all had knit hats on, said one was brown, one was green. She said one boy had a real red — I think she said tangerine red shirt on, and blue pants. The other one had blue pants but she couldn't give anything else." Buettner drove toward Greenmount Avenue. When he reached the 400 block of East Lorraine Avenue he saw appellant running across Lorraine Avenue. Buettner stopped him. "At this time he was pretty windy, and sweaty, and I had asked him what — where he was coming from. . . . He said he had just left the house up the street. So, I asked him, where was this house, and he said, 'Up in the next block,' which would be the 300 block of East Lorraine, and based on the fact of his being winded and sweaty, and the fact that he was wearing a pair of blue trousers and a brown — and I believe his was a green knit cap." The officer "placed [appellant] in the police vehicle," explained there had been a purse-snatch in the 3100 block of Barclay Street, and told him he was going to take him to the scene and "see if anyone would identify him." Buettner took appellant to the scene of the crime. The officer asked the victim if she recognized the youth and "[s]he said the same hat and same pants, but I can't be sure." Roberta Feuka ran up, and "Just as she got to the car, she pointed her hand out — into the car, and stated, 'That's one of them that grabbed my daughter's purse' . . . ." On cross-examination Buettner said appellant was under arrest when he was placed in the car. "However, if he had not been identi-

fied, I would have taken him home. He would have been released."

The State rested and the defense moved for judgment of acquittal. The motion was denied after argument. Appellant was fully advised by his counsel of his right to remain silent. Appellant elected not to testify. The defense offered no evidence. The motion for judgment of acquittal was renewed and again denied.[6] On the merits, the defense submitted on the argument presented on the motion. The State argued. The court found appellant to be a delinquent child ". . . for the reasons stated in this petition, which means in effect that I am finding you guilty of this charge against you." The court made a statement of the grounds on which it based its determination, Rule 912 d 1:

> "It, in a sense, was a close question. I believe beyond reasonable doubt that you are guilty, but in getting to the point of being beyond a reasonable doubt, it wasn't by a overwhelming margin, but it was in my mind enough a margin to make me morally certain that you were the one.
>
> It is very true that the law says that merely because a person may be present at the scene of a crime, that is not enough to prove that that person participated in that crime. I am satisfied from the testimony in the record, which is only the State's witnesses, that you were there. That you were one of the three boys standing outside the house of Ms. Feuka. Ms. Feuka — Mrs. Veronica Feuka was not able to identify you with sufficient certainty, at all. If I had to rely on her testimony, I could not place you there, but her mother's testimony was

---

6. A juvenile proceeding is not a criminal proceeding. Courts Art. § 3-833; *Pennsylvania ex rel. Warren v. Warren*, 204 Md. 467. In a delinquency case, however, the State's Attorney shall prepare and present the testimony in behalf of the petitioner unless excused by the court, Rule 912 b, and the rules of evidence applicable to criminal cases shall apply, Rule 912 c. The child may remain silent as of right and shall be so advised. Rule 917. But he is not entitled to a trial by jury. Rule 908 a. He is entitled to representation by legal counsel. Courts Art. § 3-830 d; Rule 918 b. See *Matter of Brown, supra.*

completely positive in that area, as well as the testimony of Detective Buettner, which cited the identification of you in a spontaneous way at the scene by the elder Ms. Feuka.

So, I'm perfectly satisfied that you were there at that point, but that alone, as I have indicated, is not enough to say: Well, you're guilty then of this purse-snatch. But, we have, I think, the two other circumstances. We have the fact that you ran at the same time as the other boys ran, including the two smaller boys. You were very close together with the two small boys. Now, running away from the scene of a crime — the law says, again, — is not by itself enough to find you guilty. If that's all we have to go on, the fact that you are running away from the scene of a crime, that's not enough by itself. But we have your presence, we have the close proximity to the other boys; we have you running away, and we have you running, five blocks away, still running, according to the testimony of Detective Buettner.

Now, what I think, quite frankly, tipped the scales in my mind and, though I think their conduct was highly suspicious to say the least, highly indicative of guilt, I wasn't completely positive but I could be convinced beyond a reasonable doubt that you are involved, but what tipped the scales was the uncontradicted testimony of Detective Buettner as to what you told him, as to your whereabouts, where you had come from, and I must agree with the State.

This was a lie, because I am satisfied from the testimony that you were definitely there at the corner, and you couldn't have been at both places, the corner and at a friend's house. So, the fact that you made misrepresentations to the officer, the fact you lied to Detective Buettner, gives, I think, enough support to the other factors to tip the balance to the area of being beyond a reasonable doubt in my mind.

> I am well aware, and I think I can take judicial notice of the fact, that purse-snatches today are commonly done by two or more individuals acting in concert, that they are done quite commonly, by those who station themselves in different vantage points to work harmoniously together. This is a very familiar pattern, unfortunately, and it is for these reasons that I make the finding that I do."

The test of the sufficiency of the evidence to be applied here is whether the evidence adduced either showed directly or supported a rational inference of the facts to be proved, from which the trier of fact could reasonably be convinced, beyond a reasonable doubt, that appellant was a delinquent child. *Williams v. State,* 5 Md. App. 450, 459. The facts to be proved were that the offense alleged in the petition was committed, that appellant committed it, and that he required supervision, treatment, or rehabilitation. In ascertaining whether this test was met we must do so within the strictures of Rule 1086 because the action was tried below without a jury. We may not set aside the judgment of the juvenile judge on the evidence unless he was clearly wrong, and in considering whether he was, the Rule requires that we give due regard to his opportunity to judge the credibility of the witnesses. In *Edwards v. State, Memorandum on Motion for Reargument,* 198 Md. 132, 152, the Court of Appeals was asked how it could ever say that the trial court was clearly wrong. It said, at 159, "This question can only be answered as and when it is presented, case by case. . . . [I]t is to be expected that such cases will be rare. . . ." See *Wilson v. State,* 7 Md. App. 41, 53. This is one of those rare cases. We hold that the court below was clearly wrong in its judgment on the evidence. The judgment is vacated.

The evidence before the court was legally sufficient to establish the *corpus delicti* of the crime of petit larceny — the wrongful and fraudulent taking and removal of personal property worth less than $100 from the possession of another against his will, with intent to deprive the person

entitled thereto of his ownership therein. *Connor v. State*, 6 Md. App. 261, 262. See Code, Art. 27, § 341.[7] But it was not legally sufficient to show the criminal agency of appellant. The judge below could properly find from the evidence that appellant was at the scene of the crime and that he fled. It is elementary that the mere presence of a person at the scene of the crime is not, of itself, sufficient to establish that the person was either a principal or an accessory to the crime. Nor is flight, alone, controlling.[8] *Tasco v. State*, 223 Md. 503, 509, citing *Judy v. State*, 218 Md. 168, *Watson v. State*, 208 Md. 210, and *Clay v. State*, 211 Md. 577. See *Derricks and Hilgeman v. State*, 9 Md. App. 261; *Anderson v. State*, 3 Md. App. 362; *Williams v. State*, 3 Md. App. 58. "But presence at the immediate and exact spot where a crime is in the process of being committed is a very important factor to be considered in determining guilt; . . .", *Tasco v. State, supra*, at 509, and flight is a factor that may also be considered, *Farmer v. State*, 5 Md. App. 546, 553. There must, however, in addition to presence or flight, exist other apparent circumstances upon which to base guilt beyond a reasonable doubt. In other words, the circumstances must be such as to permit the trial court to find properly that the person at the scene or fleeing was a participant.

---

7. We do not decide whether the evidence was sufficient to support a finding that the crime was robbery rather than larceny. We said in *Williams v. State*, 7 Md. App. 683, 686:

> "There is some authority for the proposition that one 'who snatches money or a purse or other property from another's hand, if no resistance is encountered, is guilty of larceny rather than robbery.' See Perkins, *Criminal Law*, p. 236; Clark and Marshall [*Crimes* (6th ed.) § 12.09] p. 782. Such factual situation could, conceivably, occur where the victim was unaware of the assailant's intentions or purposes and, thus, offered no resistance and experienced no emotion of fear. On the other hand, '[i]f there is any injury to the person of the owner, or if he resists the attempt to rob him, and his resistance is overcome, there is sufficient violence to make the taking robbery, however slight the resistance.' Clark and Marshall, *supra*, p. 788."

See *Cooper v. State*, 9 Md. App. 478.

8. On the other hand, we said in *Barnette and Crawford v. State*, 5 Md. App. 5, 8: "While flight is some indicia of crime, the lack of it does not completely negative the possibility of conviction; otherwise criminals could avoid conviction in many cases simply by not fleeing." See *Brown v. State*, 5 Md. App. 367.

The judge below, recognizing that the question was close, properly relied on the testimony of the victim's mother, Roberta Feuka, to place appellant at the scene of the crime. But the testimony of that witness made clear that appellant was not one of the two smaller boys standing together on the other side of the street, and whom she saw start after her daughter, one of them going "right after her" and grabbing her purse. Appellant, according to Roberta, was one of the three boys standing by the victim's house. He and his companion did not molest her, do anything or say anything until after the purse was taken. Then they simply ran in one direction while the two other boys ran in another direction. There was no evidence legally sufficient to show directly that the three boys on one side of the street and the two boys on the other side were together, before or after the crime, or that the "purse-snatch" was a joint enterprise. The judge below, however, inferred that all the boys acted in concert, so that appellant was an aider or abetter and, thus, a principal in the commission of the misdemeanor. *Coleman v. State,* 4 Md. App. 386. See *Agresti v. State,* 2 Md. App. 278. He reached the conclusion that appellant acted in concert with the two boys who were affirmatively proved to have committed the offense, by fleshing out appellant's presence at the scene and his flight therefrom in two ways, each of which had the effect of supplying evidence. What "tipped the scales" against appellant in the trial judge's mind, he said, was that appellant lied to the police officer when apprehended and asked where he had been. Objection was made when the officer testified that he asked appellant "where he was coming from", and the objection was overruled. It may be that evidence as to what appellant replied would be excluded by the rule of *Miranda v. Arizona,* 384 U. S. 436. The holding in *Miranda* was concisely set out at page 444:

> "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural

safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

The Court said at 477, "If a statement were in fact truly exculpatory it would, of course, never be used by the prosecution." See *Pratt v. State*, 9 Md. App. 220, 223. But see *Mulligan v. State*, 10 Md. App. 429, 433 and *Simmons v. State*, 8 Md. App. 355, 367 as to custodial interrogation. It is clear that appellant's statement was considered by the judge below as an important factor in determining that appellant committed the crime although the procedural safeguards were not demonstrated. The point of the exclusion of appellant's reply to the officer's question was neither briefed nor argued on appeal, Rule 1046 f, but, in any event, we need not decide whether it came under the *Miranda* proscription. We do not think it a rational inference, in the circumstances shown, and in the light of the evidence adduced, that because appellant lied about being present at the scene, he was, beyond a reasonable doubt, a participant in the crime. The Court of Appeals said in *Hayette v. State*, 199 Md. 140, 145; "Ordinarily disbelieving evidence is not the same thing as finding evidence to the contrary." We think the rationale underlying that observation applies to prohibit the finding reached here by the judge below.

The second way the trial judge overcame the fact, recognized by him, that appellant's mere presence and flight, in the circumstances, were not sufficient to establish criminal agency beyond a reasonable doubt, was to take judicial notice, in the complete absence of any evidence on the matter, that "purse-snatches today are commonly done by two or more individuals acting in concert, that they are done quite commonly, by those who station themselves in different vantage points to work harmoniously together. This is a very familiar pattern, unfortunately . . . ."

There are some facts which need not be proved by the

introduction of appropriate evidence because knowledge of them is so notorious that everyone is assumed to possess it. This process is called "judicial notice" and is appropriate in cases where facts are self-evident and notorious. *A & H Transp. Inc. v. Baltimore*, 249 Md. 518, 530, citing *Macht v. Hecht Co.*, 191 Md. 98, 102. See *Hettleman v. Frank*, 136 Md. 351, 362-363; *Barsallo v. Barsallo*, 18 Md. App. 560, 565-566; *Johnson v. State*, 8 Md. App. 28, n. 3 at 34. "Generally speaking, in order that a fact may be judicially noticed, it must be a matter of common and general knowledge, it must be well and authoritatively settled, and not doubtful or uncertain, and it must be known to be within the limits of the jurisdiction of the court." 29 Am.Jur.2d, *Evidence* § 22. The rule of judicial notice permits the court to dispense with proof of such a self-evident and notorious fact. *Macht v. Hecht Co.*, *supra*, at 102.[9] Generally, appellate courts will take judicial notice of any matter which the court below could have judicially noticed. 5 Am.Jur.2d, *Appeal and Error* § 739; 1 *Wharton's Criminal Evidence* 62, § 34 (13th ed. 1972). *Wharton* has a caveat: "The power of taking judicial notice should be exercised with caution, and any doubt should be resolved in the direction of a refusal to exercise such power." At 64, § 37.

*Wharton* lists and discusses numerous categories of facts of which judicial notice may be taken, pp. 68-139, §§ 42-88. Among them are crime patterns. "Criminal behavior tends to manifest itself in certain patterns. The courts may take judicial notice of such patterns when they are so common as to be known to virtually everyone." At 130, § 81. We do not believe that the facts judicially noticed by the judge below are self-evident and notorious, or are so common as to be known to virtually everyone or have such universality as to become a matter of common human experience, to the extent

---

9. 1 *Wharton's Criminal Evidence* 62, § 35 (13th ed. 1972) finds a division of authority on the question whether a party is permitted to offer contrary evidence of a judicially noticed fact. The Court of Appeals of this State, however, in *Macht v. Hecht Co.*, *supra*, at 102, quoted 9 *Wigmore on Evidence* 535, § 2567 (3rd ed.) with approval: "But the opponent is not prevented from disputing the matter by evidence, if he believes it disputable."

as to make judicial notice of them appropriate. But even if it were appropriate for the judge to notice judicially that purse-snatches are commonly done by two or more individuals acting in concert who station themselves in different vantage points to work harmoniously together, we think that it was not a rational inference therefrom that appellant was one of the criminal agents. "Judicial notice is merely the recognition of a fact or condition. Under the guise of that doctrine the court should not draw an inference of fact. Thus, when it seems that a particular fact may or may not have existed, the court should not infer the existence of such fact as a step toward defendant's conviction." *Wharton*, at 65, § 37. This must be read, however, in the frame of reference of the court as separate and distinct from the trier of fact. *Wharton* explains: "Such a process of deduction would, at least to the extent of that finding, substitute the judge for the jury and deprive the defendant of the rules relating to the burden of proof." *Id*. We take it that what this means is that by judicially noticing that purse-snatches are commonly done by two or more individuals acting in concert who station themselves in different vantage points to work harmoniously together, the court, as a court, obviated the need of proof of those facts. Those facts then served as evidence to be considered by the trier of fact, be it jury or court, along with other evidence adduced, in determining appellant's criminal agency. We find, however, assuming the judicial notice to have been appropriate, that the court, as the trier of fact, was wrong in inferring appellant's criminal agency from the evidence supplied by judicial notice because that evidence of itself and considered with the other evidence was not sufficient in law to show his guilt beyond a reasonable doubt. We point out again, that there was no evidence legally sufficient to prove that appellant acted in concert with the two boys who, without question, committed the offense or that he or his two companions did work harmoniously with the two boys across the street or that they were standing by the victim's house in order to so work. In fact, there was not even any indication that the boys on the one side of the

street knew the boys on the other side of the street, except that they were all at the scene.[10] And we observe again, that the three boys who had been together fled together in one direction, and the two boys who had been together fled together in the opposite direction.

Appellant suggests that his arrest was illegal. The legality of an arrest does not affect the jurisdiction of the court, is not a ground for dismissing a charging document and does not preclude trial and conviction for an offense. *Jones v. State*, 5 Md. App. 489, 493; *Nadolski v. State*, 1 Md. App. 304, 307. It is material when "fruits" of the arrest are received in evidence. *Wilkins v. State*, 237 Md. 617, 618; *Hammond and Couser v. State*, 7 Md. App. 588, 594-595; *Hutchinson v. State*, 1 Md. App. 362, 369. Appellant claims that Beuttner's testimony that the victim said that the clothing worn by appellant was the same as that of one of the boys on the scene and the identification of Roberta Feuka of appellant were "fruits" of the arrest. It is established in this jurisdiction that "fruits" of an arrest refer to tangible evidence seized. *Walker v. State*, 237 Md. 516, 518-519; *Butina v. State*, 4 Md. App. 312, 326.[11] We have held that an

---

10. Veronica Feuka did not see all five boys together. The State on redirect examination of her asked if she had left the house earlier on 26 December 1973. She replied: "I don't think so. I'm not sure. I don't think I did because — I don't — I really can't tell you." The State persisted: "Was there ever a time just prior to going to the store when you went out?" She answered: "Gee, I really couldn't tell you." The State did not give up: "Did you ever have occasion . . . just prior to going to the store, to observe Barclay Street." "I don't think I did. . . . Because I just got ready to go to the store, and I got what I had to get, and I left."

The testimony of Roberta Feuka was not more helpful to the State in this regard. Although her testimony seemed ambiguous at first, she made it clear. The State asked: "When did you see all five of these young men together?" She replied: "I didn't see them altogether. I saw two on the corner and three across the street by my daughter." The court asked: "At any point in time did you see all five together?" The answer was: "No, not at the same corner." Her identification of appellant on the scene as "one of them that grabbed my daughter's purse" must be considered in the light of her entire testimony.

11. *Wong Sun v. United States*, 371 U. S. 471, stating the federal exclusionary rule that any evidence obtained as a result of an illegal arrest is tainted as the fruit of a poisonous tree, does not control prosecutions in State courts. *Dailey v. State*, 239 Md. 596; *Prescoe v. State*, 231 Md. 486; *State v. Hill*, 2 Md. App. 594.

illegal arrest does not render a subsequent lineup illegal. *Metallo v. State*, 10 Md. App. 76, 80; *Tender v. State*, 2 Md. App. 692, 696-697; *Hartley v. State*, 4 Md. App. 450, 459. Even if the arrest were illegal, which we have no need to decide, the testimony of the officer and the identification by the witness were not thereby inadmissible.

Appellant suggests that the judicial identification of him as one of the boys standing under the window was tainted by the confrontation between him and Roberta Feuka. The judicial identification came into evidence without challenge, so the question of its admissibility is not before us. Rule 1085; Rules 522 d 2 and Rule 725 f; *Richardson and Thomas v. State*, 7 Md. App. 334, 339. *Thompson v. State*, 6 Md. App. 50, 54, and cases therein cited. The practical effect of the failure to challenge the in-court identification was to render it admissible at the trial. *Bailey v. State*, 6 Md. App. 496, 501. See *Jackson v. State*, 12 Md. App. 586; *Townsend v. State*, 11 Md. App. 487.

In any event, we have no difficulty in determining that the extra-judicial identification was not illegal, and, therefore, could not taint the judicial identification. We have held that prompt on the scene confrontations, absent special elements of unfairness, do not entail due process violations. *Davis v. State*, 13 Md. App. 394, *Spencer v. State*, 10 Md. App. 1; *Billinger v. State*, 9 Md. App. 628. The confrontation between appellant and Roberta Feuka at the scene was within the rule of those decisions.

As indicated, we vacate the judgment, that is the finding that appellant was a delinquent child and the placing of him on probation. Our action is predicated upon the insufficiency of the evidence. As we cannot determine from the record whether additional probative evidence can be produced at a retrial, we remand the case with directions to the juvenile court to hold a new trial if the State within a specified time can satisfy the court that it can produce additional probative evidence or to enter a judgment that appellant is not a delinquent child if the State cannot preliminarily so satisfy the court. *Gray v. State*, 254 Md. 385, 397.

It necessarily follows that the order of 4 June 1974 that the mother of appellant make restitution in the amount of $22.50 to Veronica Feuka be also vacated.[12] The judge in a juvenile cause may order the parent to make restitution to the person whose property has been stolen, Courts Art. § 3-839 (b), to a limit of $1,000, § 3-839 (c). It is obvious that unless the child has been properly found to have participated in the theft in such manner that he could be convicted of a crime if he were an adult, his parent may not be obliged to make restitution.[13]

> *Judgment that appellant is delinquent and placing him on probation vacated; order for restitution of 4 June 1974 vacated; case remanded for further proceedings in accordance with this opinion.*

---

12. The propriety of this order is not before us. Appellant's brief states that she "acquiesced in the order to pay $22.50 in restitution." See, however, *Matter of Sorrell,* 20 Md. App. 179.

13. We observe that the court may order the child "who wilfully or maliciously destroys or steals property" to make restitution if feasible considering age and circumstances of the child, and that if this is ordered "the liability of the child precedes the liability of the parent." Courts Art. § 3-839 (d).