# LAWRENCE WILBUR HALL *v.* STATE OF MARYLAND

[No. 24, September Term, 1981.]

*Decided February 24, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Patricia E. McDonald, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

In this case the issue we shall decide is whether a statement made by the accused to a probation officer conducting a presentence investigation at the direction of the trial court is admissible in a subsequent trial for purposes of impeachment.

The parties agreed upon the pertinent facts. On March 6, 1979, Willard and Lorraine Sheppard, along with their son, Stanley, were present in their Bethesda jewelry store, when, at about 11:15 a.m., a well-dressed man came to the door. The door, which was equipped with a lock operated by means of a buzzer, was opened by Stanley Sheppard and the man entered the store. Once inside, the man produced a pistol and announced, "This is a holdup." Moments later, a second man, identified at trial as the appellant, walked up to the door and stood there, looking in. The man inside the store, while pointing his weapon at the Sheppards, backed towards the door and attempted unsuccessfully to open it. He then demanded that the Sheppards press the buzzer to release the lock and admit the second man; the Sheppards refused. Apparently while the gunman was distracted by his attempt to open the door, Stanley Sheppard escaped to the basement beneath the store. Willard Sheppard then seized a pistol which was hidden in a cabinet and fled towards the base-

ment. As he did so, the man inside the store fired his pistol, wounding Mr. Sheppard in the back. Mrs. Sheppard then pressed the buzzer, releasing the lock and the gunman went out the front door. Mrs. Sheppard testified that the gunman, after stepping outside, paused for a moment with the second man who had remained standing at the door throughout the incident. The two then turned and walked in opposite directions.

Willard and Stanley Sheppard emerged from the basement and went in search of the robbers. Approximately a block away, they observed Lawrence Wilbur Hall standing near a bus stop. Stanley Sheppard flagged down a policeman and directed his attention to Hall, who was at that time attempting to enter a taxicab. The policeman approached Hall, ordered him to put his hands on top of the cab, and frisked him. Hall was carrying an empty briefcase and had a fully loaded revolver in the pocket of his coat. His alleged accomplice in the robbery, the man who entered the store and shot Mr. Sheppard, was neither apprehended nor identified.

Lawrence Wilbur Hall was tried by a jury in the Circuit Court for Montgomery County for assault with intent to rob, use of a handgun in the commission of a felony, carrying a handgun, and related offenses. The jury found Hall guilty of the crime of carrying the handgun. However, the jury was unable to reach a verdict as to the remaining charges and as to these charges a new trial was scheduled.

After Hall's conviction on the handgun charge and prior to the second trial, the court ordered a presentence investigation report. Pursuant to this order Hall was interviewed by Louis S. Monk, Jr., a probation officer. The presentence report was filed and Hall was sentenced.

At the second trial Hall took the witness stand and testified that at the time of the offense he was employed by Adreana's Pizzeria as a night delivery man and had been robbed before. He further testified that at the suggestion of his boss he carried the handgun to protect himself while working, that he had been working the night before his

arrest, and that he had forgotten to take the handgun out of his coat pocket before leaving the house on the day he was arrested.

The prosecutor, on cross examination, asked Hall questions regarding his employment at Adreana's. Hall continued to maintain that he was employed the night before and that this was the reason the gun was in his coat pocket. Thereafter, the prosecutor called Monk as a rebuttal witness to testify on the limited question of Hall's employment. Defense counsel objected. In a hearing outside the presence of the jury, the trial court ruled Monk's testimony admissible for purposes of impeachment. Monk testified before the jury that during the presentence interview Hall said that he was unemployed from January through March 6, 1979. Defense counsel did not request an instruction that Monk's testimony be admitted solely for purposes of impeaching Hall's credibility nor did the trial court offer such instruction on its own motion. Hall was convicted.

The Court of Special Appeals affirmed the judgment of the trial court in *Hall v. State,* 47 Md. App. 590, 425 A.2d 227 (1981). The intermediate appellate court rested its decision on the premise that there was no violation of Hall's Fifth Amendment protection against self-incrimination, as his statement was not compelled, and that there was no violation of his Sixth Amendment right to counsel because there had been no deliberate elicitation of incriminating statements by the State. We agree with the judgment reached by the Court of Special Appeals but rest our decision upon a different basis.[1]

Before us, Hall contends that the Court of Special Appeals erred in its consideration of his Fifth and Sixth Amendment rights, citing *Estelle v. Smith,* 451 U.S. 454, 101 S. Ct. 1866,

---

[1]. In its decision of this case, the Court of Special Appeals recognized the impact of Oregon v. Hass, 420 U.S. 714, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975), and Harris v. New York, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971), on the admissibility of testimony offered for impeachment where it might otherwise be inadmissible. Hall v. State, 47 Md. App. 590, 597-98, 425 A. 2d 227 (1981). It is our opinion that these cases are the crux of the holding in this case and obviate the necessity of a protracted Fifth and Sixth Amendment analysis.

68 L. Ed. 2d 359 (1981), and *Edwards v. Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1980), as dispositive. Hall also maintains that because the trial judge did not give a limiting instruction regarding Monk's testimony, the evidence was substantive and not restricted to its impeachment effect. Hall further argues that eliciting testimony on the presentence report in open court violated Maryland Code (1971, 1981 Cum. Supp.), Art. 41, § 124(b), providing for the confidentiality of presentence investigation reports.

As we noted, the Court of Special Appeals found that there had been no violations of Hall's Fifth and Sixth Amendment rights. However, assuming, *arguendo,* that *Miranda* warnings were constitutionally required and the statement given to Monk was not preceded by *Miranda* warnings,[2] and that the defendant's counsel was not present at the interview, the statement would still be admissible for purposes of impeachment.

In *Franklin v. State,* 281 Md. 51, 375 A.2d 116 (1977), *cert. denied,* 434 U.S. 1018, 98 S. Ct. 739, 54 L. Ed. 2d 764 (1978), we addressed the propriety of the admission of an extrajudicial statement where we assumed the statement was obtained without complying with the mandates of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We held that

> a statement may be received in evidence at the criminal trial of the declarer for the purpose of impeaching his credibility, not generally, but specifically with regard to a contradiction, reasonably inferred, between issues initiated by him on direct examination and the impeaching statement, provided the trustworthiness of the evidence satisfies legal standards. This is so even though the statement was obtained during a custodial interro-

---

**2.** In Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Supreme Court held that prior to any custodial interrogation by law enforcement officers the accused must be warned that he has a right to remain silent; that any statement he makes can be used against him; that he has the right to the presence of an attorney; and if he cannot afford an attorney one will be appointed for him.

gation without the warnings by *Miranda* being given, or defectively given, or, if properly given, not effectively waived. [281 Md. at 58.]

*Franklin* followed the Supreme Court cases of *Harris v. New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971) and *Oregon v. Hass,* 420 U.S. 714, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975). In *Harris* an extrajudicial statement made by the accused was admitted into evidence to impeach testimony given by the accused on direct examination. The evidence was not admissible substantively because the accused had not been properly advised of his rights in the manner prescribed by *Miranda* and at the trial the court instructed the jury that the evidence regarding the out-of-court statements was to be considered only for its impeachment value. The Supreme Court ruled that even though the technical requirements of *Miranda* and the Fifth Amendment had not been met when the statement was obtained, the evidence was properly admitted. The reasoning was that "[t]he impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby." 401 U.S. at 225.

This precept was reiterated in *Oregon v. Hass, supra.* In *Hass* statements obtained after the defendant had asked for a lawyer were used to impeach testimony elicited on direct examination. The jury was instructed that the evidence was to be considered only for whatever impact it had on the defendant's credibility. The Supreme Court found *Harris* to be controlling and added that "the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." 420 U.S. at 722.

Examining the circumstances in the instant case under the rules established by this Court in *Franklin* and the Supreme Court in *Harris* and *Hass* it is obvious that Hall cannot prevail on his contention that the statement he made

to Monk, the probation officer, was inadmissible because it was obtained without *Miranda* warnings. The prior inconsistent statement was admitted to impeach Hall's credibility. It related specifically to the statement made by Hall on direct examination that he was employed at the time he was arrested and directly contradicted that assertion. Hall does not claim that the evidence was coerced nor does the record reflect such foul play. Under these circumstances it is apparent that the trial court properly admitted the testimony of the probation officer.

Nor do we find any violation of Hall's Sixth Amendment right to counsel. The record is clear that Hall and his counsel were aware that the trial court ordered a presentence report. As a matter of fact, the record suggests that defense counsel escorted him to the Department of Parole and Probation for the interview and left him there. We agree with the Court of Special Appeals that there "is no evidence which suggests that the state contrived to separate the appellant and his counsel or to conduct the interview at a time when appellant's counsel was not present." 47 Md. App. at 596. We find no Sixth Amendment violation.

There is, however, a factual wrinkle present in this case that was not present in *Harris* or *Hass.* The admissibility of the extrajudicial comment is predicated on its use for impeachment purposes only. In both *Harris* and *Hass* the trial judge gave limiting instructions to the jury, saying that the testimony was to be assessed for its impact on the defendant's credibility and not as substantive evidence of guilt. No such limiting instruction was given in the instant case. Hall contends that this allowed the jury to consider the evidence substantively, thereby obviating the applicability of the *Harris-Hass* exception.

We find this contention unpersuasive for two reasons. First, Hall's defense attorney did not request a limiting instruction nor did he object when such an instruction was not given. Second, even without a limiting instruction the testimony by its nature was not substantive evidence of guilt. Hall argues that the absence of an objection or a request when the impeaching testimony was heard does not

preclude him from prevailing on this point on appeal. Hall cites *People v. Green,* 27 Cal. 3d 1, 164 Cal. Rptr. 1, 609 P.2d 468 (1980), and *Jones v. State,* 243 Ga. 820, 256 S.E.2d 907, *cert. denied,* 444 U.S. 957, 100 S. Ct. 437, 62 L. Ed. 2d 329 (1979) for the proposition that giving a limiting instruction is a prerequisite to admitting impeachment evidence and that the burden is on the trial court to give the instruction.

We initially point out that, while these cases may have stood for the propositions Hall suggests, both cases found the absence of instruction to be harmless error. More important, however, is the fact that the law in this State is controlled by a Maryland Rule that has been well articulated by case law. Maryland Rule 756 (g) provides that:

> Upon appeal a party assigning error in the instructions may not assign as of right an error unless (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct was distinctly objected to before the jury retired to consider its verdict and (2) the grounds of objection were stated at that time. Ordinarily no other error will be considered by the Court of Appeals or the Court of Special Appeals, but the appellate court, either of its own motion or upon the suggestions of a party may take cognizance of and correct any plain error in the instructions, material to the rights of the accused even though such error was not objected to as provided by section f of this Rule.

Thus, unless we can find "plain error" in the instructions, material to the rights of the accused, Hall is precluded from complaining about the trial court's failure to give an instruction on appeal.

The doctrine of plain error was recently the subject of extensive scrutiny by this Court. In *State v. Hutchinson,* 287 Md. 198, 411 A.2d 1035 (1980), we reversed a conviction for second degree rape where the trial judge failed to instruct the jury that, aside from various guilty verdicts it could find,

it could also find the defendant not guilty. We expressed our disinclination to prescribe a fixed formula for plain error but went on to say that

> we do expect that the appellate court would review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention. . . . In our cases we have characterized instances when an appellate court should take cognizance of unobjected to error as compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial. 287 Md. at 202-03.

Applying the principles of *Hutchinson* to the case at bar we are led to the conclusion that there was no plain error. The testimony introduced by the State was narrowly focused on the question of the truth of Hall's assertion that he was employed at the time of his arrest. We cannot characterize the situation as compelling, extraordinary, or exceptional nor does it appear that the failure to instruct was an error that was so fundamental that Hall was deprived of a fair trial.[3]

That the failure to give a limiting instruction was not plain error is further supported by examining the nature of the evidence admitted. Monk testified only that Hall had told him that at the time of the offense he was unemployed. This was not an occasion where there was a conflict with an alibi defense or some other offer of proof of criminal agency. Rather, Monk's testimony concerned only a prior inconsistent statement and did not in any way offer substan-

---

**3.** Maryland cases abound with instances where the plain error doctrine was advanced for a failure to instruct and where this Court subsequently denied review. *See, e.g.,* Dimery v. State, 274 Md. 661, 338 A.2d 56 (1975), *cert. denied* 423 U. S. 1074, 96 S. Ct. 857, 47 L. Ed. 2d 84 (1976), (failure to tell jury in rape case they could specify a penalty less than life not plain error); Giles v. State, 229 Md. 370, 183 A.2d 359 (1962) (failure to instruct not reviewed because Court refused to engage in appellate alleviation of trial tactics); Madison v. State, 200 Md. 1, 87 A.2d 593 (1952) (Court refused to pass on a non-existent jury instruction).

tive evidence of Hall's guilt or innocence. As such the evidence could only have been interpreted as reflecting on credibility. On the basis of the foregoing rationale, we conclude that Hall's failure to object to the lack of instruction or failure to request a limiting instruction precludes him from using this as a leg upon which to support the alleged constitutional violations that he contends occurred.

Hall's last contention is that admitting Monk's testimony was a violation of Maryland Code (1971, 1981 Cum. Supp.), Art. 41, § 124 (b) and Maryland Rule 771 (b). In pertinent part, section 124 (b) provides that "presentence reports shall be confidential and not available for public inspection except upon court order or for use by any correctional institution." Maryland Rule 771 (b) tracks section 124 (b) and provides that a presentence report "is not a public record and shall be kept confidential as provided in Article 41, § 124 (b) of the Maryland Code."

The short answer to this contention is that the report was not introduced nor was the substance of the report made public. The information provided the probation agent is the kind (such as name, age, home address) routinely and preliminarily ascertained in any interview and is not gathered for the purpose of incriminating the defendant. In our view this type of information was not intended by the Legislature to be protected by § 124 (b) and thus we find no violation of either the spirit or the letter of § 124 (b) or Rule 771 (b).

We hold, therefore, that Monk's testimony based on the presentence interview was admissible to impeach Hall's statement made on direct examination and, as limited, this testimony did not violate the confidentiality requirements of Article 41, § 124 (b) or Rule 771 (b).

*Judgment of the Court of Special Appeals affirmed.*
*Appellant to pay the costs.*